391 Mich. 706 (1974)
220 N.W.2d 33
In re MENDELSON ESTATE
DETROIT BANK & TRUST COMPANY
v.
ST. AUGUSTINE NATIONAL BANK
No. 6 December Term 1973, Docket No. 54,637.
Supreme Court of Michigan.
Decided June 25, 1974.
Bodman, Longley, Bogle, Armstrong & Dahling (by Walter O. Koch), for plaintiffs.
*708 Butzel, Levin, Winston & Quint (by Henry H. Sills), for defendants.
T.G. KAVANAGH, J.
This case involves two questions, one substantive and the other procedural. They may be stated:
1) Are trustees justified in distributing $225,000 to a life beneficiary in order to reimburse her for an expenditure of approximately $50,000 for a mausoleum room for herself and her family?
2) Was it an abuse of discretion on the part of the Oakland County courts to entertain jurisdiction after the Wayne Circuit Court had decided a controversy involving the same parties and trusts?
I. REGARDING THE SUBSTANTIVE QUESTION.
The trust involved here was a testamentary trust established pursuant to Paragraph 23 of Aaron Mendelson's will.
Paragraph 23 provides in pertinent part:
"TWENTY-THIRD: Since the death of my beloved wife JENNIE GROGAN MENDELSON I have remained unmarried. During that time I have cherished and cultivated the love and affection of my daughter GLADYS M. KUHN. I have been and am deeply conscious and sympathetic of her welfare and comfort. I profoundly realize the distress which from time to time has been visited upon her and have done all in my power to alleviate it. I am conscious that she has the greatest love and affection for her children and exercises all the supervision and direction of a devoted mother. I have never voiced and do not now express any objection to her remarriage. However, I feel that I would be helping her in her period of readjustment in providing for a trust of a portion of the residue which I intend to provide for her rather than to give it to her outright. In *709 order that there may be no inequality in the gift of the residue I am making the same provision for my son HERBERT A. MENDELSON.
"I direct that my Executors shall divide all of the rest, residue and remainder of my estate and property, real, personal and mixed, of whatsoever name and nature, and wheresoever situated, as nearly as possible into two distinct and separate trusts, and shall transfer, assign and convey the two trusts to my son HERBERT A. MENDELSON, FRED M. BUTZEL and HARRY L. WINSTON, as Trustees, and if necessary, my Executors shall execute instruments of transfer and conveyance to effectuate this purpose. I give, devise and bequeath each of said trusts as a distinct and separate trust to my Trustees above named in this paragraph, and to the survivors or survivor of them, and to the successors and substitutes of them as is hereinafter provided, with full power to sell, assign, transfer and dispose of the same, or any part or parts thereof, and to invest and reinvest the proceeds as in their judgment may seem best, UPON TRUST NEVERTHELESS, to the ends, and for the intents and purposes follows:

* * *
"B. My Trustees shall designate one of the said trusts of the residue, consisting of one-half of the entire residue, as a trust for the primary benefit of my daughter GLADYS M. KUHN. My Trustees shall pay five (5%) percent of the net income from the said trust to my daughter GLADYS M. KUHN during her lifetime, and the balance of the income of the said trust shall be accumulated during the lifetime of GLADYS M. KUHN, provided, however, that my Trustees may pay any portion of the income in excess of five (5%) percent thereof to my daughter GLADYS M. KUHN from time to time as they see fit in their uncontrolled discretion, so that at any time that my Trustees believe that my daughter requires additional funds for her proper maintenance, according to her standard of living, or in order to meet any other contingency, or for any other reason, they may pay over to her an income in excess of five (5%) percent out of current or accumulated income. The five (5%) percent of the income shall be paid in quarterly *710 installments, or more frequent installments as my Trustees deem advisable." (Emphasis added.)
The trustees' powers to invade the corpus under the trust was set forth in paragraph 24 of the will:
"TWENTY-FOURTH: Notwithstanding any of the provisions above set forth in this Will the Trustees designated as Trustees of the particular trust set forth in this Will are hereby authorized and empowered respectively, to expend any portion of the corpus of any of the trust estates created in this Will for the benefit of the particular beneficiaries named under the particular trusts in order to take care of illness, accident, emergency or extraordinary circumstances, or in order to provide for the necessary support and comfort of any beneficiary included in the particular trust wherein this situation may be applicable. The amount and the occasion for such expenditure shall rest in the sole discretion of my Trustees. In order to relieve the beneficiaries who may also be Trustees of any particular trust of possible embarrassment in voting in favor of himself or herself, I direct that in determining whether any portion of the corpus of any trust shall be expended that the unanimous consent of all Trustees other than the beneficiary who may be a Trustee shall be required." (Emphasis added.)
The parties agree, and the law is well established, that the intention of the testator controls. The trustees assert that since the express language of the trust instrument is that the trustees may pay such part of the trust income (over 5%) to the life beneficiary "as they see fit in their uncontrolled discretion", and such part of the corpus as the trustees in their "sole discretion" may determine as required to take care of illness, accident, emergency or extraordinary circumstances, any who would oppose a proposed payment must show that such payment is contrary to *711 the intent of the testator or prompted by a selfish, corrupt or improper motive on the part of the trustees.
The defendants maintain that despite the terms "uncontrolled discretion" and "sole discretion" used by the testator, he established a standard against which to measure the exercise of discretion.
In the case of income the testator set the test as that such as the beneficiary "requires additional funds for her proper maintenance", and in the case of corpus, as that such as is "in order to take care of illness, accident, emergency or extraordinary circumstances, or in order to provide for the necessary support and comfort of any beneficiary".
We agree with defendants that the testator did establish such standards.[1] See Bogert, Trusts & Trustees (2d ed), § 560, p 118 et seq. and 3 Scott, Trusts (3d ed), § 187, p 1501 et seq.
Our decision must turn on whether or not the record shows that the trustees met these standards.
Neither the circuit court's conclusion that the trustees' decision to reimburse the beneficiary was made in good faith nor the probate court's observation that the purchase of a crypt is a once in a lifetime expenditure will suffice to answer the question: "Is the proposed payment in accord with the intent of the testator?"
This question can be answered only by deciding whether the beneficiary "requires additional funds for her proper maintenance" (if the payment can be made from income) or whether such payment is "in order to take care of illness, accident, emergency or extraordinary circumstances or in order *712 to provide for the necessary support and comfort of any beneficiary" (if to be made from corpus).
In this regard it is incumbent upon the trustees to establish the requirement for the beneficiary's mere request will not do so. It is their determination based upon demonstrable reasons that the court must assay and not their good faith.
II. REGARDING THE PROCEDURAL QUESTION.
The trust with which we are concerned here was established under a will admitted to probate in Oakland County. Although a subsequent action involving this trust was instituted in Wayne County, such action did not vest jurisdiction to the Wayne court to the exclusion of jurisdiction in the Oakland courts.
On the contrary, the express language of the Wayne decree contemplates other courts of competent jurisdiction acting pursuant to it.
There is no reason in comity or otherwise why the Oakland courts should not have acted on this petition. It was required by and was fully in contemplation of the Wayne decree.
Because the order of the Oakland County Probate Court was not based upon a demonstration of compliance with the intent of the testator as herein discussed, such order and the orders of the Oakland Circuit Court and the Court of Appeals affirming such order are set aside.
The matter is remanded to the Oakland Probate Court for further proceedings consistent with this opinion.
The defendants may tax costs.
*713 T.M. KAVANAGH, C.J., and SWAINSON, WILLIAMS, LEVIN, and M.S. COLEMAN, JJ., concurred with T.G. KAVANAGH, J.
J.W. Fitzgerald, J., did not sit in this case.
NOTES
[1] Where the testator does not express standards the court will articulate them.